TERRY, ADMX. *v.* BURKS.

5-1077                                                295 S. W. 2d 354

Opinion delivered November 19, 1956.

*J. B. Milham,* for appellant.

*Joe W. McCoy,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Curtis Burks, brought this action January 11, 1955, praying that a partnership between him and A. O. Terry (now deceased) be dissolved; that a receiver for the firm's business be appointed, ''for settlement and accounting of firm's business and for winding up the partnership and for all proper relief.'' Appellant filed answer and cross-complaint. Upon a trial the court found: ''That

prior to the date of his death the deceased partner, A. O. Terry had withdrawn from the partnership, all of his invested capital and that his net worth in the partnership at that date was a minus $2,561.89. That on the date of his death the said deceased partner, A. O. Terry, owned no rights in the partnership, but in reality the assets were the property of the plaintiff, Curtis Burks. Wherefore, it is ordered, adjudged and decreed that the cross-complaint of the defendant be dismissed, and that the defendant take nothing thereby. That plaintiff is the owner of the assets of said business.'' This appeal followed. For reversal appellant, in effect, argues that the findings and decree of the chancellor are against the preponderance of the testimony. We do not agree.

Appellant is the widow of A. O. Terry who died intestate December 25, 1954. In January 1954 A. O. Terry became engaged in the feed and fertilizer business in Malvern, and after operating the business until March 16, 1954, he sold a one-half interest to appellee Burks — on an estimated inventory of $4,300 clear of all debts — for a cash consideration of $4,300, thus, was formed a partnership in which each partner owned a one-half interest. Thereafter Terry operated the business until his death and appellant was appointed administratrix of his estate. Burks, as the surviving partner, continued operation of the business until January 1955 when, on his petition, he was appointed receiver of the partnership assets by the Hot Spring Chancery Court and proceeded to wind up the business. On November 10, 1955, appellant was by court order permitted, on her petition, to take her husband's (A. O. Terry) interest in the partnership assets. She took over this interest on December 27, 1954, on this latter date, December 27, 1954, merchandise, cash and assets of the partnership inventoried $24,485.54 and the liabilities approximated $17,-331.24, leaving assets of about $6,423.74. By this original audit and inventory, from the facts and records available at that time, the interest of Burks in the partnership appeared to be $2,713.87 and that of A. O. Terry $713.61. It later developed, however, from the testimony of witnesses at the trial that there were a large number of

undisclosed outstanding debts and claims against the partnership not shown in the first audit and a second or amended audit was made which we think, by a preponderance of the testimony, supports the chancellor's findings that appellant had no interest left in the partnership and was in fact indebted to it. We do not attempt to detail, or set out, the various claims established by the testimony against the partnership. As indicated, following the testimony at the trial, an amended audit was prepared by Mr. Baldridge, an accountant, and quoting from his testimony: "Q. According to your amended audit, what would be Mr. Terry's worth in the partnership? A. He would have nothing if the audit was submitted to the partnership. He owes the partnership $2,561.89. Q. When did you make this audit? A. The original audit was begun on the 27 December, 1954. We made the corrected audit today. We showed an analysis of the partnership in the original audit. Q. Do you also show analysis of the partnership in the amended audit? A. In the supplemental audit, we take the balance showing the partnership net worth in which it shows Curtis Burks $2,713.87 and A. O. Terry $713.61 and by introducing this supplemental audit we take 50% of the $745.-32 and the additional liabilities and make a reduction of each of $2,272.71 and in addition to the groceries and gas bills paid for A. O. Terry leaving $1,014.27 and we add back to the 50% of the over stated charge of taxes of $11.47 to Mr. Burks and $11.48 to Mr. Terry's account, leaving the partnership net worth as of December 27 of $452.63 to Curtis Burks and A. O. Terry deficiency of $2,561.89. Q. The records of the company as of December 27 with correction show that as the worth of the two respective partners as of December 27, 1954? A. That is correct." There was testimony of other witnesses tending to corroborate Mr. Baldridge.

Having concluded that the findings and decree of the chancellor are not against the preponderance of the testimony, the decree must be and is affirmed.